STATE of Minnesota, Respondent,

v.

Dexter E. BINGHAM, Sr., Appellant.

No. C3–86–1799.

Court of Appeals of Minnesota.

June 2, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appel-

late Section, Beverly J. Wolfe, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Appellant Dexter E. Bingham, Sr. was convicted of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.-342, subds. 1(a) (Supp.1985). On appeal, he contends that the evidence is insufficient to support the conviction and that the circumstances do not warrant double departure from the presumptive sentence. We disagree and affirm.

## FACTS

When appellant and Janet Sue Eaton (n.k.a. Janet Bingham) married in 1971, she had two daughters (T. and S.) from previous relationships. The couple thereafter had two more daughters (W. and S.B.) and a son.

Appellant began sexually abusing his stepdaughter T. in 1974 (when she was 8 years old) and his stepdaughter S. in 1978 (when she was 8 or 9 years old). The abuse continued almost uninterrupted until 1981, when appellant sought treatment. He reported his behavior to a social worker and then to the police. After being arrested and charged, appellant pleaded guilty to one count of criminal sexual conduct in the second degree. He was placed on 15 years probation and ordered to complete a sexual offender treatment program. During the inpatient portion of the program, appellant and the family attended joint counseling sessions.

In April 1983, appellant completed the in-patient phase of the program but continued to receive treatment as an out-patient. After violating the terms of his probation by spending more time with his family than

was allowed, appellant was arrested and sentenced to 21 months in prison. He was released in July 1984 and lived in an apartment by himself until December 1984, when he moved back home.

The current offense involving appellant's 9–year-old daughter S.B. occurred in August 1985. Appellant and his wife were both employed as cab drivers and left for work on the day in question at about 1:45 a.m. Appellant, however, had forgotten his license and trip sheets and returned home to pick them up. He testified that when he entered the living room, S.B. was asleep on the couch and the family dog was jumping around. He claimed that he sat on the coffee table to calm the dog and then went into the kitchen to get a cup of coffee. When he returned to the living room, S.B. was awake and greeted him. He then returned to work.

S.B. testified that she had fallen asleep on the couch. She stated that while asleep she felt a finger inside her vagina and that she awoke to find appellant sitting beside her. She said "hi" to him and he indicated he had come home to pick up his license. She testified that he then left.

S.B. did not tell anyone of the incident until the next afternoon when her sister W. asked her "why she was so crabby." S.B. responded that appellant had done the same thing to her that he had done to their stepsisters T. and S. S.B. then told stepsister S., who testified that S.B. was crying at the time. S. and S.B. went to their mother, who called appellant at work and told him to come home.

That evening the family had a meeting and confronted appellant, who denied that he had touched S.B. In response to her mother's questions, S.B. stated that she was not sure that appellant had touched her. The matter was forgotten.

The authorities first became involved when stepsister S., who was pregnant and had been receiving counseling, mentioned the August incident to her therapist. The therapist notified child protection authorities. S.B. was interviewed in November 1985 by Sgt. Shirleen Ann Hoffman, a

member of the family violence unit of the Minneapolis Police Department.

Appellant eventually entered pleas of not guilty to two counts of criminal sexual conduct. The first count charged him with criminal sexual conduct in the first degree and was based on the August 1985 incident with S.B. The second count charged him with criminal sexual conduct in the second degree and alleged that he had engaged in sexual contact with his 11–year-old son. Prior to trial, the second count was dismissed with leave to reissue because the son's emotional state left him unable to testify.

At trial, S.B. testified as to the August 1985 incident. She also claimed that appellant had touched her in a similar fashion one summer while he was teaching her how to swim. S.B. agreed that while she was too young to remember her father's abuse of her stepsisters, she learned of his behavior during the joint family therapy sessions.

Stepsisters S. and T. were allowed to testify as to their prior experiences with appellant. T. testified that the abuse sometimes occurred while she was asleep. Both testified that appellant would fondle their breasts and vaginal areas, with occasional digital penetration, and that prior to his arrest in 1981, appellant attempted to have intercourse with them.

Appellant testified in his own defense. He denied touching S.B. in August 1985 and claimed that he has not acted sexually towards any of his children since his arrest in 1981.

A guilty verdict was returned. Following grant of the State's motion for an upward durational departure from the presumptive sentence, appellant was sentenced to imprisonment for a period of 116 months. This appeal followed.

## ISSUES

1. Was the evidence sufficient to sustain the conviction?

2. Did the trial court abuse its discretion in departing durationally from the presumptive sentence?

## ANALYSIS

### I

In reviewing a sufficiency of the evidence claim, this court

> must take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence. If the jury, giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, could reasonably have found the defendant guilty, that verdict will not be reversed.

*Patten v. State,* 378 N.W.2d 648, 650 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Feb. 14, 1986) (quoting *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978)).

Corroboration of a complainant's testimony in a sex crime case is not required. Minn.Stat. § 609.347, subd. 1 (1984). Appellant nevertheless asserts that because there is no corroborating physical evidence, his conviction is based solely on S.B.'s testimony, which is neither credible nor accurate. We disagree. This case contains other strong corroborating evidence including S.B.'s prompt reporting of the incident to her sisters and her mother; her sisters' testimony that she was "crabby" or crying when she reported the incident to them; and testimony by appellant admitting that he and S.B. were in the home together and that S.B. was asleep on the couch. *See Marshall v. State,* 395 N.W.2d 362, 365 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. Dec. 17, 1986) (and cases cited therein). The testimony of S.B.'s stepsisters further established that appellant had subjected them to similar sexual contact when they were 9 years old and that he had sometimes touched stepdaughter T. while she was asleep. Given the legitimate inferences that can be drawn from the evidence presented, the jury could reasonably conclude that appellant was guilty of the offense charged. *Merrill,* 274 N.W.2d at 111.

We also disagree with appellant's assertion that S.B.'s testimony is suspect

because she was well aware of his prior misconduct with her stepsisters and because at the family meeting following the August incident she had told her mother that she was not sure that the incident had occurred. S.B.'s statements and her testimony during trial were positive and consistent. Her credibility was bolstered by Sgt. Hoffman, who testified that children will often talk about an incident and then deny it because it frightens them. Hoffman also testified that S.B.'s emotional reaction was quite normal and that she had no reason to believe that S.B. was fantasizing or looking for attention. The jury was entitled to believe S.B.'s version of the facts and to disbelieve appellant. *See State v. Berry*, 309 N.W.2d 777, 784 (Minn. 1981), *subsequent appeal aff'g Berry v. State*, 364 N.W.2d 795 (Minn.1985); *State v. Warborg*, 395 N.W.2d 368, 371 (Minn.Ct. App.1986).

## II

■ In deciding whether to depart durationally from a presumptive sentence, a sentencing court must examine whether the defendant's conduct was "significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Cox*, 343 N.W.2d 641, 643 (Minn.1984). If substantial and compelling factors are present, a court has discretion to "impose a sentence that is deemed to be more appropriate, reasonable, or equitable than the presumptive sentence." Comment, Minnesota Sentencing Guidelines II.D.01. Double departure is justified in this case on the grounds cited by the trial court, which include the child's particular vulnerability and appellant's infliction of emotional and psychological harm upon her and her family. *See* Minnesota Sentencing Guidelines II.D.2.b.(1), (3).

Appellant insists that because a victim's vulnerability is implicit in the statutory of-

fense definition and is taken into consideration in the offense severity level ranking, it should not be used again as a basis for departure. *See State v. Brusven,* 327 N.W.2d 591 (Minn.1982). We disagree. While the age of the victim in this case may be implicit in the statutory offense, other facts establish victim vulnerability. Appellant was in a position of authority over S.B. and used that trust relationship to place her in a vulnerable position by attacking her while she was asleep on the family couch.[1] *See State v. Cermak*, 344 N.W.2d 833, 839 (Minn.1984).

■ Appellant further asserts that a victim's injury is considered an aggravating factor only where there was actual *physical* injury, not psychological trauma that is implicit in the offense. He insists that if psychological and emotional injury are sufficient to justify departure, then any case of a repeat sexual offense would automatically establish aggravating circumstances. We disagree. The State must establish injury and departure will not be automatic. *See State v. Johnson*, 327 N.W.2d 580, 584 n. 4 (Minn.1982). "Injury" generally includes psychological injury. *See* Minn.Stat. § 609.341, subd. 8 (1984). *See also State v. Mortland*, 399 N.W.2d 92, 95 (Minn.1987) (severe aggravating factors present to justify departure for assault offense even though victim sustained no physical injury, where evidence established severe psychological injury). In this case, the State has shown that S.B. and her stepsisters continue to receive counseling and that appellant's conduct has caused the final breakup of the family. *See Kilcoyne v. State*, 344 N.W.2d 394, 397–98 (Minn.1984).

Given these facts, appellant's conduct was more serious than that typically involved in commission of the crime of criminal sexual conduct in the first degree. Under these circumstances, we uphold the departure.

---

**1.** These facts (which establish vulnerability) are cited by the State on appeal as evidence that appellant's conduct violated two other subsections of the statute governing criminal sexual conduct in the first degree: appellant attacked S.B. when she was "physically helpless" because she was asleep, and appellant has a "significant relationship" to her. Minn.Stat. § 609.342, subds. 1(e)(ii) and 1(g) (Supp.1985). Departure may also be justified in part because of these multiple violations. *See, e.g., Ture v. State,* 353 N.W.2d 518, 522 (Minn.1984); *State v. Morales,* 324 N.W.2d 374, 377 (Minn.1982).