STATE of Minnesota, Respondent,

v.

Robert Edward ROSS, Sr., Appellant.

No. C8–88–1298.

Court of Appeals of Minnesota.

Feb. 6, 1990.
Review Denied April 13, 1990.

232

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, James A. Terwedo, Scott County Atty., Thomas J. Harbinson, Asst. Scott County Atty., Shakopee, for respondent.

John M. Stuart, State Public Defender, Steven P. Russett, Asst. State Public Defender, St. Paul, for appellant.

Considered and decided by WOZNIAK, C.J., and FORSBERG, and NORTON, JJ.

## OPINION

NORTON, Judge.

This appeal is from convictions for first-degree and second-degree criminal sexual conduct. Minn.Stat. §§ 609.342, subd. 1(a), 609.343, subd. 1(a) (1988). This appeal was certified to the supreme court and later remanded for consideration in light of *State v. Conklin*, 444 N.W.2d 268 (Minn. 1989). We affirm.

## FACTS

Appellant Robert Ross was charged with acts of sexual abuse against T.S., his girlfriend's four-year-old daughter. Ross lived with the child's mother, from April to August 1987. T.S.' mother testified that on August 10 or 11 of 1987, when she was bathing T.S., the child complained her "butthole" hurt. T.S. then told her mother of anal penetration by Ross. Ross admitted he had babysat T.S., but denied the offense, claiming it was fabricated by T.S.' mother in retaliation for his leaving her.

On August 24, 1987, T.S.' mother reported the alleged abuse to Belle Plaine Chief of Police Steve Rost, who interviewed T.S. and her mother the same day. T.S. was immediately seen, and examined, by a family practitioner, Dr. Halgren. On September 4, 1987, the child was interviewed and examined by Dr. Carolyn Levitt, a pediatrician specializing in child abuse cases. On October 3, 1987, the child discussed the abuse incidents with her stepmother, P.S.

The trial court held a pre-trial hearing on the reliability of these out-of-court statements, as well as T.S.' statement to her mother. *See* Minn.Stat. § 595.02, subd. 3. The trial court reserved a ruling on their admissibility, and held a competency hearing.

At the competency hearing, the court questioned T.S. in very general terms. T.S. then spontaneously asked "Where is Bob?" and stated, "We don't like him." Ross was not present, although his counsel was present and questioned T.S. The trial court found T.S. competent to testify, stating it was generally satisfied she could remember and relate events truthfully.

At trial the court ruled all hearsay statements admissible. The trial court also ruled that, during T.S.' trial testimony, Chief Rost and P.S. could be present in the courtroom as support persons, but T.S.' mother, whom the state had suggested, could not.

Chief of Police Rost testified he received a phone call on Monday, August 24, from T.S.' mother relating the report of sexual abuse. Rost first talked to the mother alone, then called T.S. in and, while she sat on her mother's lap, told T.S. her mother had told him T.S. had played a "game" with Ross. Rost asked her what the game was, and T.S. told him, "Bob put his peepee in my butthole."

Dr. Halgren, a family practitioner, examined T.S. after taking a history from her mother. Dr. Halgren asked T.S., who was present during this history, what happened. During his physical examination, Dr. Halgren noticed small, healed scars on T.S.' rectum, which were "consistent with" sexual abuse. Dr. Halgren gave his medical opinion that T.S. had been abused. On cross-examination, he stated his physical findings were "relatively inconclusive."

Dr. Levitt interviewed T.S. after talking separately with the child's mother. A videotape of this interview was played for the jury. In it, T.S. reported anal penetration by Ross. Afterwards, Dr. Levitt obtained physical findings which were consistent with abuse but not conclusive. During the hearing on admissibility of the out-of-court statement, Dr. Levitt expressed her medi-

cal opinion that T.S. had been sexually abused.

T.S.' stepmother testified that on October 3, T.S. volunteered the fact that Ross was in jail, and described what he had done, again in terms of anal penetration. She stated T.S. seemed "scared" when she reported this.

When T.S. testified, and the prosecutor asked her about Ross, she said she didn't want to hear about him. She asked where her mother was, and stated she was scared. When asked if she was ever alone with "Bob," she said no. She also said she didn't like "Bob," but didn't want to tell what he did.

The trial court then recessed and suggested some options to counsel, particularly two-way video. Defense counsel objected to the process, since the jury had just observed the child balk at testifying in the presence of Ross.

The following day, the court announced its decision to proceed with two-way videotaped testimony under Minn.Stat. § 595.02, subd. 4(c)(2). Defense counsel then objected to the procedure and challenged the constitutionality of the statute. The trial court stated on the record that T.S. "was scared being in [Ross'] presence." The court then arranged a two-way video procedure, including a phone line from defense counsel, in the room where the child would testify, to Ross in another courtroom, where he as well as the jury would view the testimony on a video monitor. The court also altered the arrangement of support persons, substituting T.S.' mother for her stepmother.

When T.S.' testimony resumed, she immediately asked where "Bob" was, and was shown his image on the TV monitor. After preliminary questioning, T.S. became very active and ignored attempts to focus her attention. The trial recessed briefly and the prosecutor resumed questioning, using anatomically correct dolls. T.S., using the dolls, stated that Ross penetrated her "butt." She testified this occurred three times.

The defense presented a series of witnesses who testified T.S.' mother's reputation in the community for truthfulness was poor. A friend of Ross testified the mother was upset with Ross in August 1987 for leaving her, and threatened Ross in the witness' presence. Ross' mother testified that after her son moved back home, T.S.' mother came looking for him, and the following night called claiming T.S. had been sexually abused.

The state presented rebuttal testimony of a psychologist, Dr. Jane McNaught, concerning psychological aspects of sexual abuse cases, and the general credibility of very young children claiming sexual abuse. Dr. McNaught also expressed an opinion on delays by *parents* in reporting abuse after they have been told by the child. Ross objected to this testimony, and the court sustained the objection. Defense counsel asked that the jury be instructed to disregard the testimony. No ruling was made on this request and no cautionary instruction was given.

During their deliberations, the jury asked to view the videotapes of T.S.' trial testimony and her interview with Dr. Levitt. They also asked to hear a transcript of T.S.' testimony, and of Dr. Levitt's testimony. The trial court granted all four requests.

The jury found Ross guilty of one count of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct.

## ISSUES

1. Was appellant denied his right to confrontation?

2. Was appellant denied a fair trial by the effect of alleged trial errors?

3. Is the evidence sufficient to sustain the convictions?

## ANALYSIS

### I.

Minn.Stat. § 595.02, subd. 4 (1988) allows the court to order the testimony of a child victim of alleged sexual abuse to be taken outside the presence of the defendant, or with a partial screen between the

witness and defendant. The supreme court in *State v. Conklin*, 444 N.W.2d 268, 272–73 (Minn.1989), found this statute constitutional but concluded on the facts of the case before it, and based on the trial court's findings, that the .defendant's sixth amendment right to confrontation had been denied. *Id.* at 274. The court concluded this error was not harmless. *Id.* at 275.

■ The confrontation clause and the statute itself require a "particularized finding" that a procedure shielding the child from face-to-face confrontation is necessary to prevent traumatization. *State v. Conklin*, 444 N.W.2d at 272; *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); *see* Minn.Stat. § 595.02, subd. 4(c) (court must "determine" defendant's presence would traumatize the child). The trial court here found, on the record, that T.S. "was scared being in [Ross'] presence." Ross does not contend this oral finding was procedurally insufficient.

The trial court found that T.S.
by what I observed in court yesterday would be psychologically traumatized and appeared to be so somewhat yesterday if there was effort or continued effort to have the youngster testify in the actual physical presence * * * of the defendant, versus the approach we're using here this morning. I think it's clear yesterday she was scared being in his presence, the defendant's presence. She showed that in her expressions to me. In my opinion she did, and in the comments that she made about him. Therefore, I find it necessary to employ a means that's in compliance with [Minn. Stat. § 595.02, subd. 4(c)(2).] * ,* *

The trial court had evidence, beyond its own observations, that amply support this finding. The state presented pretrial testimony that T.S. had explicitly stated at an interview with the prosecutor that it would not be "all right" if Ross were present when she testified. T.S. had specifically asked whether "Bob" would be there. When T.S. took the stand, she said she was scared, and didn't want to hear about "Bob". This evidence of traumatization specifically caused by defendant's presence

is far stronger than in *Conklin* where the child had said she was *not* afraid of the defendant and the trial court's finding mentioned another traumatizing factor. *State v. Conklin*, 444 N.W.2d at 273–74.

The supreme court in *Conklin* suggested that a separate hearing, with testimony specifically relating to traumatization, should be held in future cases. *Id.* at 274. A separate hearing, which *Conklin* does not indicate is mandatory, was not necessary in this case, which was tried before *Conklin*. The trial court's finding of traumatization is supported by evidence in the record and beyond the trial court's own perception of the witness, and is thus reviewable on appeal. *See generally State v. Borough*, 279 Minn. 199, 202, 156 N.W.2d 757, 759 (1968) (appellate review is limited to matters appearing in the record). Expert testimony was not required because the cause of T.S.'s trauma was clear. *State v. Conklin*, 444 N.W.2d at 274.

Ross also contends that the procedure employed was unfairly prejudicial because it created an impression of his guilt. The *Conklin* court noted its concern that the prosecution mentioned to the jury, during the playing of the child's pre-trial videotaped testimony, the point at which defendant was removed from the courtroom. *Id.* at 276. In *Conklin*, the prejudice was created by a comment which was entirely gratuitous, because all procedures had been accomplished before trial. Here, Ross was not removed from the child's presence until mid-trial, after T.S. had already balked at testifying. Any prejudice was created by the necessary shift in trial procedures.

The statute does not preclude a mid-trial switch to recorded or closed-circuit testimony. *See* Minn.Stat. § 595.02, subd. 4(a)–(c). Ross did not raise the issue of the appearance of prejudice at trial, and the trial court attempted to minimize any prejudice to Ross by emphasizing the procedural details of the "modified arrangement" for T.S.' testimony. The trial court has broad discretion in controlling the manner in which testimony is received. *See* Minn.R. Evid. 611(a); *Manion v. Tweedy*, 257 Minn.

59, 67–68, 100 N.W.2d 124, 130 (1959). We find no abuse of discretion.

## II.

■ Ross challenges the trial court's finding that T.S. was competent to testify. A trial court's finding of competency will not be reversed absent a clear abuse of discretion. *State v. Cermak*, 350 N.W.2d 328, 332 (Minn.1984). The trial court questioned T.S., and elicited a recognition of the difference between the truth and a lie. The court asked further questions to determine the child's verbal abilities. *See generally State v. Fader*, 358 N.W.2d 42, 45 (Minn.1984) (trial court inquiry focused on child's understanding of the need to tell the truth and her capacity to narrate the facts); *see also State v. Struss*, 404 N.W.2d 811, 814 (Minn.Ct.App.1987) (trial court has broad discretion in the types of questions asked), *pet. for rev. denied* (Minn. June 9, 1987). Although T.S. gave some troubling answers, she also showed she could give correct responses to simple questions and understood what lying was. The trial court did not clearly abuse its discretion in finding T.S. competent.

■ Ross also contends the trial court erred in failing to require T.S. to take an oath before testifying. *See* Minn.R.Evid. 603. However, Ross did not object, and the importance of telling the truth was impressed upon the child. We find no Minnesota cases holding it is plain error to fail to administer the oath. *See generally* Minn. R.Crim.P. 31.02 (plain error may be considered on appeal although no objection was made). In any event, the absence of an oath was not prejudicial given the child's recognition of the difference between truth and falsity and the little her testimony added to her pre-trial statements.

■ Ross argues the trial court erred in allowing T.S.' mother to be present as a support person, and in ruling on the number and placement of support persons. Minn.Stat. § 631.046, subd. 1 (1988), which allows a "parent, guardian, or other supportive person" to be present during the child's testimony, has not been judicially construed. However, we find Ross' construction of this language as permitting only one support person to be an unduly narrow reading of a remedial statute. *See State v. Moseng*, 254 Minn. 263, 269, 95 N.W.2d 6, 11 (1959) (remedial statutes are to be liberally construed). The trial court did not abuse its discretion in determining the number, choice and placement of support persons.

■ Ross contends the trial court abused its discretion in allowing Dr. Halgren to give his medical opinion that T.S. had been sexually abused. The admission of expert testimony is generally within the discretion of the trial court. *Seelye v. State*, 429 N.W.2d 669, 673 (Minn.Ct.App.1988). However, Dr. Halgren's opinion was based almost entirely on the history he was given, a history he elicited without using techniques child abuse experts use in interviewing children. *Cf. State v. Bellotti*, 383 N.W.2d 308, 317 (Minn.Ct.App.1986) (expert medical opinion on sexual abuse properly admitted from examining physician who was an expert in child sexual abuse), *pet. for rev. denied* (Minn. Apr. 24, 1986). Although this opinion should not have been admitted, it was harmless error. Dr. Halgren was thoroughly cross-examined on the basis for his opinion, which depended largely on his belief in the history given to him. Moreover, the jury could readily infer from Dr. Levitt's testimony that her opinion was that T.S. had been abused.

Ross' argument that the trial court prejudicially erred in failing to strike part of Dr. McNaught's testimony is without merit. On rebuttal, Dr. McNaught testified on the reporting characteristics of *parents* of sexual abuse victims. Although Ross' defense was that T.S.' mother fabricated the abuse allegation, the jury would not likely have found the delay relevant to that theory. There was no independent evidence of when T.S. could have reported the abuse to her mother. If the jury were inclined to believe the mother fabricated the report, it is reasonable to suppose she could have arranged the dates in her story to minimize the reporting delay.

Ross' final claim of trial error concerns the granting of the jury's requests to review parts of the evidence.

The trial court has considerable discretion in handling jury requests to review trial testimony. *State v. Daniels*, 332 N.W.2d 172, 177 (Minn.1983). The court allowed the jury to review videotapes of T.S.' interview with Dr. Levitt and of her trial testimony, and to have read to them the entire testimony of T.S., as well as that of Dr. Levitt. The *scope* of the jury's request may have been unreasonable. *See id.* (reasonableness of jury's request is an important factor). However, a defendant can hardly challenge the *granting* of such a request unless it unfairly highlights a portion of the evidence. *Cf. State v. Spaulding*, 296 N.W.2d 870, 878 (Minn. 1980) (court abused its discretion, to defendant's prejudice, by stating no testimony would be reread). Since the jury's broad request did not unfairly highlight a portion of the evidence, granting the request simply enabled the jury to take greater care in evaluating the evidence.

### III.

Ross argues the evidence is insufficient to sustain the convictions. However, T.S. testified to anal penetration by Ross, and her testimony was corroborated by her out-of-court statements, by Ross' opportunity to commit the offense, by the consistency of T.S.' descriptions of the acts, and, to some extent, by the physical examination. *See, e.g., State v. Bingham*, 406 N.W.2d 567, 569 (Minn.Ct.App.1987). There was defense testimony challenging the credibility of T.S.' mother. However, the credibility of witnesses is for the jury to determine. *State v. Daniels*, 361 N.W.2d 819, 826 (Minn.1985). Viewing the evidence in the light most favorable to the verdict, and assuming the jury believed the state's witnesses and discounted contrary evidence, the evidence is sufficient to sustain the convictions. *See State v. Wahlberg*, 296 N.W.2d 408, 411 (Minn.1980).

### DECISION

Appellant was not denied his right to confrontation, and trial error did not deprive him of a fair trial. The evidence is sufficient to support the convictions.

Affirmed.